Number 20-3518 Western Missouri, Brandon Whittington v. Tyson Foods. May it begin when you're ready. May it please the court. My name is Joshua Wunderlich and I, along with my colleague Catherine Paulus, represent the appellant in this case, Mr. Brandon Whittington v. Tyson Foods. We request that this court reverse the district court's of summary judgment to appellee Tyson Foods on Mr. Whittington's claim of FMLA interference. District court in this case erred in finding that Mr. Whittington failed to establish a genuine issue of material fact as to whether Tyson interfered with his FMLA rights. Mr. Whittington asserts that his FMLA rights were interfered with when Tyson repeatedly required him to obtain recertification of his need for intermittent FMLA leave to deal with his serious health condition, specifically serious anxiety and depression, and ultimately refused to return to work when he failed to comply with that demand. The record reflects that there is no dispute regarding whether Tyson was subject to FMLA, whether Mr. Whittington suffered from a serious health condition, or whether he had sufficient remaining FMLA leave hours available when he made his requests for extended leave in December 2017 or in February 2018. Those leave requests were related to exactly the same issues for which his medical provider had previously certified his need for substantial intermittent leave back in August of 2017. Thus, this case boils down to one, whether Tyson's requests for recertification were reasonable. More importantly, two, who has to prove whether the requests were reasonable or not, and three, most importantly, who gets to ultimately decide that issue. Employers' requests for recertification under the FMLA are governed by statute and by regulation. 29 U.S.C. 2613E states that an employer may, it's an important word may, request certification, but seemingly only on a reasonable basis. Of course, the question then becomes, how does one know whether the basis for the request is reasonable? And 29 CFR 825.308 answers that question. The answer to that question depends heavily on the duration that the original certification anticipated the condition to last. And if that was more than 30 days, then the employer must wait as long as that anticipated duration, or six months, whichever is shorter, unless one of three conditions is satisfied. And the condition at issue here today is whether the circumstances described by the original certification had changed significantly. Read together, the statute and the regulation clearly contemplate that recertification requests by an employer are the not the rule, and employers should only be allowed to seek recertification in limited circumstances. And if recertification is not the norm, then it should not be the employee's job to prove that conditions did not call for recertification, but rather that it was the employer's job to prove that they did. Right now, this seems as good of a time as any to talk about this court's recent decision in Evans v. Cooperative Response Center from May of this year, which came down after this case was fully briefed. I bring it up just because the facts of that case make it clear that it is not applicable here. In that case, it appears from the decision that the plaintiff repeatedly attempted to use leave for conditions that were not even contemplated by her doctor's original certification. Tyson makes no argument that this was an issue in this case, and the record is clear that Mr. Whittington did nothing of the sort. But more importantly, that plaintiff's reliance on the regulation that we've been talking about was for a completely different purpose. That plaintiff argued that the employer didn't do enough to verify her need for FMLA before terminating her employment, while Mr. Whittington argues that Tyson did too much. Both can be both can conceivably give rise to a claim of FMLA interference, but they're very different in kind, and it should be noted, as pointed out in the briefing, at least one other court in this circuit viewed Mr. Whittington's concern of burdensome serial requests for recertification as the precise justification for the limitations that are found in Section 825.308. So why wasn't Tyson permitted to view the length, the duration of his absence as a significant change? Tyson is generally, employers are allowed to view on a case-by-case basis whether the duration of leave was a substantial change from the previous certification. We would argue, though, and what I was actually getting ready to talk about, was that the issue becomes when the language in the regulation talks about substantially different, and when the statute talks about whether something is reasonable. As even Judge Lowry at the hearing on the motions for summary judgment recognized, she says, this is a Seventh Amendment issue. If we're talking about reasonability and substantial, those are all fact question words. And so if someone has to decide whether something is reasonable or whether something is substantial, that's best left for the fact finder. Is it your position that whether or not the circumstances described by the previous certification have changed significantly, that that can never be determined as a matter of law by the judge on a summary judgment and that always has to go to a trial? No, Your Honor, and I concede that that would be an unreasonable position. Obviously, there are fact issues that get determined by a court at a summary judgment level all the time. The question is, it's a case-by-case analysis. And sometimes, as defendants, there's appellees cited in their briefing, both at the trial level and at this level, and as the court below relied upon, there are certainly cases where judges have said, yeah, that is, as a matter of law, there's no way a reasonable jury could find that that was, that the circumstances hadn't changed considerably. But it's a case-by-case analysis. And in the briefing, both at the trial level and here, we provide a hypothetical that shows how the timing that Mr. Whittington, the time that Mr. Whittington took off in February and March of 2018, before he attempted to come back to work on March 6th, there is an interpretation of that time that would have fallen directly within his provider's certification. And so, at that point, now there's a, and we can see there's nothing on the record that says, all right, his every day was a new, was a new flare-up, or... Do you need some evidence? I'm at a summary judgment stage. Do you need some evidence to support your, another way of looking at this to make that a reasonable way of interpreting the leave? In other words, I think what you're saying is you could break it down into sections. And so that they did fall within the four to five days at a time. But what's in the record that supports your interpretation when you've got the doctor's note that said, well, we've been working on his meds and that's about all we've got, suggesting that maybe it was one long 16-day leave of absence? Well, Your Honor, I would argue that functionally, the difference, there's no functional difference. It's, he still missed the same amount of time. He still used the same FMLA leave, even if he, I mean, arguably if he called in every day and said, well, I got better last night at the end, but when my day of work got done, but it flared up again this morning, that would arguably conflict with the doctor's certification. Or if he said, well, I flared up last Monday, I got better Friday night. Oh, I flared up again Monday this morning. And that lasts another week. Either, however you look at those, that has no impact on Tyson's ability to continue work without him, to re-staff, to replace someone while he's gone. The time he misses is exactly the same. The time, the amount of FMLA leave that he used is the same. So we would argue that that's a distinction without a difference, Your Honor. And so very quickly, I have very little time, but just very quickly, the question becomes, so what? So even if you say that it's up to the fact finder to decide that it was reasonable or not, if it was significantly changed or not, what's the harm? And as the briefing goes into some pretty, we would argue, detail about, the harm is that Tyson clearly relied on his failure to return the new certification, which we would argue is improper. And as a result, that ultimately led to his termination. And that would be the harm. And as you see, I'm out of time. So unless the court has any other questions, we would ask the court to reverse the grant of summary judgment on Tyson's behalf. Thank you. Ms. Berhorst. May it please the court, Jennifer Berhorst appearing on behalf of Tyson Foods. In creating the Family Medical Leave Act, Congress was intending to balance the need to provide employees with reasonable leave for their personal medical reasons, but doing so in a manner that In that vein, the purpose of requiring an employee to designate the expected frequency and duration of the intermittent leave is to put the employer on notice as to how much work the employee might miss in a given period, which allows the employer to plan accordingly. Permitting employees to take leave deviates significantly from the leave certified by their doctor and designated by their employer, places too much of that burden on the employer and leaves the employer ill-equipped to provide coverage for the employees assigned duties in their absence. As such, Congress passed certain provisions and directed the Department of Labor to establish regulations to keep these obligations in check. While the statutes and regulations and their detailed obligations are very important, the practical implications of such regulations are equally and arguably more important. As I'm sure you all are aware, Tyson's in the poultry processing industry and requires a consistent workforce to provide poultry products to the world. It relies on an assembly line where each employee plays a critical role. Well, Council, do we factor in the type of work under this statute? I mean, it doesn't really say consistent with the nature of the job obligations. It really just says whether the circumstances from that certification have changed significantly. I agree with that, Your Honor. I think what I'm trying to set up is just that there is some sort of balance and it has to occur. By enacting these regulations, Congress was attempting to provide some rules and some boundaries, both to understand and explain that an employee's obligations are important and they certainly have burdens they have to overcome. But employers also have to have some consideration in this equation. We certainly want to be sure that this process doesn't overly burden the employee. But in the same respect, we have to ensure that the employer can function. And that's what we were trying to accomplish here. Following his initial FMLA certification in August of 2017, Tyson expected that Mr. Whittington may need to be absent four to five days at a time. Based on Whittington's medical certification and his previous frequency and duration of absences, Tyson had no expectation that he would be absent for three concurrent weeks. And it was not adequately prepared to provide any sort of notice for this extended leave that he took. And he wasn't able to make contact with any person at Tyson during the duration of those three weeks to alert Tyson as to his potential return date or even to explain what was going on with his condition. When Mr. Whittington attempted to return, Tyson had no knowledge of what had transpired. The recertification documents are designed and intended for this exact purpose, to determine the nature of the absence, the future scope, duration and frequency of the absences that may be needed, and potential accommodations that might be required. Tyson did exactly what the regulation contemplated. As Mr. Wunderlich explained, the FMLA permits re-certification on a reasonable basis, but the statute itself doesn't define what's reasonable. However, the implementing regulations provide clear guidance to the employers on what is reasonable. So typically an employer can request recertification every 30 days unless the initial certification provides an expected duration that's longer than the 30-day period. In that case, the employer must wait the minimum duration until it expires, but in no case more than six months. But the regulations also provide several clear exceptions, one of which applies here, when the circumstances described by the previous certification have changed significantly. The plaintiffs attempt to persuade the court that there are material facts that remain in dispute and that the reasonableness standard and the significantly changed circumstances standard necessarily require a decision by the fact finder. The plaintiff fails to identify any such controversial facts. The facts are clear and they're unequivocal, leaving nothing for a jury to consider. The district court appropriately applied the following undisputed facts to the law here. First, Mr. Whittington's original certification indicated his condition would for 12 months. The certification projected intermittent absences of four to five days per episode. Following the certification, Mr. Whittington was absent for 16 working days, which equates to 22 calendar days, a leave time that far exceeded any previous leave time he had taken and a duration that was three to four times longer than what had been expressed in the certification. And looking historically, Mr. Whittington had kind of routinely taken, you know, his lengthiest leave only being 11 calendar days. So this leave was unique. It was different than those prior occasions. Well, that's another follow-up question I'd have for you. Do we look at the pattern of what had happened or are we solely looking at the prior certification? Your Honor, I think you can look at both. In instances, at least the case law would suggest, in instances where the certification itself provides an expected duration, courts often look specifically to that expected duration. There are cases, some of which we have cited, where the doctor's certification didn't provide a number of days. It just says, we can't predict one way or the other. And so in those circumstances, we should look to the pattern of what the employee has established. And I think either way you look at it here, he well exceeded what we expected. The certification said four to five days. His pattern of practice had been one to two days. So a 16-day continual absence was significant either way you look at it. When Mr. Whittington attempted to return back to work on March 6th, it's undisputed that what he provided to Tyson was a doctor's note that said, in total, please excuse Brandon from work starting February 12th through March 5th, 2018. We have been adjusting his meds in the past weeks. Call didn't say was the condition that was causing his absence. It didn't indicate whether his intermittent leave would need to be modified moving forward. It didn't address whether he could return to work. It didn't address whether he had any ongoing restrictions. In total, it gave no indication of his status moving forward, which is exactly what Tyson needed to understand here. There are no other facts at issue here. There's nothing else that the court needs to have to make the reasonablest determination, and plaintiff identifies none. Unlike the cases that the plaintiff relied on, notably the Regic case, there is no credibility determinations to be made. There's no inferences that the jury needs to determine, and there's no weighing of factual disputes that needs to occur here. Mr. Whittington's February and March 2018 leave was just different. It warranted explanation that wasn't provided in his hearing. We would ask that the court affirm it. We do recognize in our brief that the 8th Circuit has no binding precedent on this particular topic, but the regulations themselves do provide an example that's directly on point. The 6th Circuit has also issued two opinions that demonstrate that where no factual dispute exists, the court and not a jury can decide whether a recertification request is reasonable. I would direct the court's attention to the Smith and the Graham case, as they both came from the 6th Circuit. The Smith case provides probably the most analogous facts to this case and provides nearly an identical excess duration compared to the original certification as Mr. Whittington. There, the court affirmed that the recertification request was reasonable when the employee was originally approved for intermittent leave one day every three months, but the employee ended up taking six days off in a six-month period, equating to three times the original approval. In Graham, as I mentioned before, the doctor didn't quantify the frequency and the duration of the expected absences, but looking at the employee's history, she typically missed three to four days in a given episode that could occur up to four times a month. There, the court determined that an uptick of 28 continuous days was a significant change warranting recertification. So not only are these cases factually on point, they also demonstrate that a court can make this determination without a jury, even though the appellate or appellant seems to suggest that the reasonableness words and the significantly changed words necessarily require some sort of jury weighing or determining of facts. The district court judge here did appropriately recognize that reasonableness determinations often can require jury determinations, but she heard argument from counsel on that exact issue, and after reviewing the facts and the case law and the argument of the lawyers, she determined that jury consideration wasn't necessary here because the material facts at issue are uncontroverted and the law necessitates a finding that the recertification request was reasonable. Therefore, Tyson requests that the court affirm the decision of the district court finding that Tyson's recertification request was reasonable and was not an interference of plaintiff's ethnically rights. To the extent the court determines that recertification was appropriate here, the remaining arguments of the plaintiff are largely moot. If the recertification request was proper, the regulations state that the employee must comply with the request. He didn't do so here. That was a reason and a basis for termination. Similarly, if the recertification was proper, the fitness for duty certification was also appropriate and failure to provide the fitness for duty certification permits termination as well. And just with my last remaining seconds, I will just say for the record, we would argue that the appellant's second claim regarding fitness for duty claim was not preserved. It was weighed by failing to produce it adequately at the underlying court. Thank you, your honors. Thank you. I see that you have no rebuttal time. Do you need a minute or do you feel like you your position on your case? If the court is willing to grant me a minute, I would certainly appreciate it. We'll give you a minute. All right. Thank you, your honor. As far as the, I'll kind of work my way backwards. As far as the waiver issue goes, I'll just point, I'll direct the court to the briefing where we articulate that the Tyson was well aware of the fitness for duty argument, leading into even the argument on the summary judgment motion prior to going to that argument. And so we would argue that any unfairness that was caused to Tyson by not raising it in our initial summary judgment response would be, or in our initial summary judgment brief would be mitigated. And then finally, referring to the issue of the example that's in the regulations that counsel discussed, that again, uses very permissive language. It's an example, but it's it's not necessarily controlling. And in fact, the cases that council sites and the regulation, they try to use them as specific number of days that Mr. Whittington exceeded is equivalent to or exceeding. And the examples are in the cases, but clearly if you look at them and proportionally, Mr. Whittington did not proportionately exceed the anticipated leave that the proportionate examples in the cases or in the regulation provided. So with that, again, we would request the court reverse the holding of the lower court. Thank you to both counsel for your argument here today and your briefing. We will take the matter under advisement.